Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
**PANEL XII**

| | | |
|---|---|---|
| H. DÍAZ SANTINI & CO., INC.<br>Apelada<br><br>v.<br><br>AMP PROPERTIES, CORP.<br><br>Apelante | KLAN202400965 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV08320 (SALON 802 CIVIL)<br><br>Sobre: DESAHUCIO POR INCUMPLIMIENTO |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa y la Jueza Díaz Rivera[1]

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2025.

Ante nosotros comparece la compañía AMP Properties, Corp. Mediante el recurso de apelación solicita la revocación de una Sentencia emitida en su contra, durante un proceso de desahucio sumario. La Sentencia ordenó el desalojo de la propiedad en un término de cinco días y el pago de $2,000 por concepto de honorarios de abogado. Los hechos esenciales para comprender nuestra determinación son los siguientes.

I

AMP Properties, Corp., en adelante el apelante o la arrendataria y H. Diaz Santini & Co., Inc., en adelante el apelado o arrendador, otorgaron el 12 de julio de 2012 un contrato de arrendamiento sobre un local comercial ubicado en el 1302 de la Avenida Jesús T. Piñero, Local 5 en San Juan. La vigencia del contrato se extendería por un año desde el 1 de agosto de 2012 hasta

---

[1] La integración del panel se modificó mediante orden administrativa OATA-2025-013 efectivo el 6 de febrero de 2025.

el 31 de julio de 2013. La arrendataria, al finalizar el contrato, podría extender el mismo, bajo los mismos términos y condiciones por dos años adicionales, o sea, hasta el 31 de julio de 2015. El canon de arrendamiento se estableció en $800 mensuales.

Las partes pactaron que el incumplimiento de cualquiera de las cláusulas contractuales daría derecho a la arrendadora a dar por terminado el contrato y exigir el inmediato desalojo del local. En caso de que la arrendadora tuviese que acudir al foro judicial solicitando el desahucio o cobro de dinero la arrendataria sería responsable del pago de $2,000 por concepto de honorarios de abogado. Así también pactaron que, si la arrendataria permanecía ocupando el local después del vencimiento del contrato o de su prorroga, sin que se hubiese gestado un nuevo contrato con la arrendadora se entendería que a partir de esa fecha existía un contrato de mes a mes entre las partes, bajo los mismos términos y condiciones, excepto el canon de renta que aumentaría un 15% sobre la renta vigente al vencimiento de contrato.[2]

En su escrito el Apelante reconoce que el contrato entre las partes estuvo vigente hasta el 31 de julio de 2015, fecha a partir de la cual se continuó renovando tácitamente, de mes a mes. Sostuvo el apelante que el 19 de agosto de 2021 el Apelado le envió una comunicación exigiendo que desalojara el local o en la alternativa aumentándole la renta a $1,000 mensuales. Afirma el apelante que dicho aumento no estaba acorde con el aumento de 15% acordado en la cláusula 18 del contrato entre las partes. No obstante, la relación contractual continuo hasta que tres años después, el 19 de julio de 2024, cuando el Apelado le entregó una nueva comunicación. Esta vez la comunicación declaraba vencido el contrato y exigía el desalojo en un término no mayor de 12 días.

---

[2] Véase Contrato de Arrendamiento, apéndice del recurso, páginas 24 a 44.

Afirma el apelante que trató de dialogar con el arrendador para que el desalojo fuera más ordenado, pero no lo logro.

Así las cosas, el 9 de septiembre de 2024, el Apelado radicó una Demanda de Desahucio Sumario en su contra. Entre las alegaciones de la demanda adujo que a pesar de que el arrendatario continuó ocupando el local después del vencimiento del contrato bajo un contrato de mes a mes, nunca pagó el aumento de la renta de 15% sobre los $800.00 de la renta original convenida en el contrato. Sostuvo que mediante carta entregada a la mano al señor Andrés Marrero Pabón, presidente de la corporación apelante, le habían informado que no renovarían el contrato, dándolo por terminado al 30 de septiembre de 2021. Puntualizó que en esa comunicación se le reclamó al arrendatario, el pago de dos meses de renta atrasados; le informó que por pura consideración al señor Marrero no le había exigido el aumento en la renta de conformidad con lo estipulado en el contrato; le solicitó que desalojara y entregara las llaves del local no más tarde del 10 de octubre de 2021 y, le advirtió que de no remover sus pertenencias del local y entregar las llaves antes del 10 de octubre de 2021, el pago mensual por el uso del local a partir de esa fecha y hasta que eso ocurriera sería de $1,000.00 mensuales. Por consideración tampoco exigió el pago del 5% de penalidad por demora a pesar de los repetidos atrasos en el pago de la renta después del quinto día del mes. Afirmó que el arrendatario hizo caso omiso de todas sus advertencias. Razón por la cual le entregaron una segunda comunicación a la mano, el 18 de julio de 2024, concediéndole hasta el 31 del mismo mes y año para desalojar el local a lo cual el arrendatario volvió a hacer caso omiso. Así las cosas, en virtud del vencimiento del contrato, dio por terminado el contrato de mes a mes. No obstante, la arrendataria se negó a desalojar el local, entregar las llaves y ha incumplido con el pago de la renta. Por tal razón y queriendo recuperar la posesión de

su propiedad en virtud de lo dispuesto en 32 LPRA 2821 y el Artículo 725 del Código Civil de Puerto Rico del 2020, solicito el desahucio. Además, solicitó el pago de $2,000.00 para costas y honorarios de abogado según pactados expresamente en el contrato como suma líquida y exigible con la presentación de la demanda.[3]

Así las cosas y luego de la correspondiente vista en su fondo el Tribunal de Primera Instancia emitió una Sentencia en la que declaró con lugar la Demanda, ordenó el desalojo y condeno a AMP Properties, Corp., al pago de $2,000.00 por concepto de honorarios de abogado, más costas y gastos del litigio.

Inconforme con la determinación del foro recurrido el apelante presento el recurso que nos ocupa en el cual señala lo que a su juicio son

a) Erró el TPI al condenar al Apelante al pago de $2,000 en honorarios de abogado cuando el Apelado rechazó invitaciones al diálogo previo al litigio, una vez comenzado rechazó ofertas razonables, impuso condiciones imposibles y ello constituiría un enriquecimiento injusto.

b) Erró el TPI al sancionar un requerimiento arbitrario de desalojo de 12 días y negarle al Apelante un término justo y razonable para efectuar el desalojo.

c) Erró el TPI y abusó de su discreción al negarse a convertir el procedimiento a uno de desahucio ordinario.

En cuanto al primer error señalado, el apelante afirma que no procede la imposición de los dos mil dólares ($2000.00) pactados en caso de incumplimiento toda vez que no se trata de un contrato incumplido sino finalizado. También alude al termino de 12 días para desalojar el local como uno arbitrario e irrazonable por ser extremadamente corto. Explicó que no pudo cumplir con dicho término por lo corto del mismo y por no haber tenido tiempo para buscar otro lugar donde mudar su mercancía. Afirmó que continuó pagando la renta, aunque el apelado haya decidido no depositar los

---

[3] Véase Demanda, Sistema Unificado de Manejo y Administración de Casos (SUMAC), entrada número 1.

cheques. El apelante alega que el arrendador se negaba a dialogar sobre opciones que permitieran el desalojo ordenando después de 14 años de relación contractual. Arguyó también que la Sentencia resultaría en un enriquecimiento injusto, toda vez que el abogado de la corporación apelada es el padre de la presidenta de esta, señora Karla Díaz quien testificó que no le pagó nada en honorarios por llevar esta Demanda.

Por su parte y en cuanto a la anterior, el apelado, sostuvo que el pago de $2,000 fue acordado expresamente por las partes en la Cláusula Catorce del contrato de arrendamiento de verse obligada a presentar una demanda de desahucio contra la Apelante, lo que la apelada tuvo que hacer ante la negativa de la Apelante a devolver la posesión del local.

La parte apelante sostiene en referencia al segundo error que de la misma manera que se pactó que en caso de que no quisiera renovar el contrato estaría obligado a informarlo con por lo menos 60 días de antelación al vencimiento del término original, se debía aplicar la misma consideración al arrendatario concediéndole al menos el mismo término para desalojar en vez de 12 días. El apelante interpreta que aun cuando la cláusula solo hacía referencia al arrendatario no se debía interpretar que el apelado podía ignorarla por completo, o dar por terminado el arrendamiento cómo y cuándo quisiera, como en efecto hizo, toda vez que las partes contratantes se obligan "no solo al cumplimiento de lo expresamente pactado sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Entonces colige que el foro recurrido se equivocó al no aplicar los mismos principios al arrendatario.

Por último, afirma la apelante que erró el TPI y abusó de su discreción al negarse a convertir el procedimiento a uno de desahucio ordinario. Afirma que el foro recurrido se equivocó al no

proveer fundamento alguno para su negativa a cambiar la naturaleza del proceso. Aduce que le costó pues ni siquiera pudo contestar la Demanda. Por su parte, la apelada sostiene que dicha aseveración es una mentira, razón por la cual, en su escrito ante este foro, la apelante ocultó referencias a documentos presentados por ella misma ante el TPI y la Orden del del 23 de septiembre de 2024 que así lo demuestran. Explica que el foro recurrido le concedió un término a la apelante para contestar la demanda y presentar las defensas afirmativas que estimara procedentes. Afirma que el foro recurrido declaró No Ha Lugar la moción de la Apelante del 18 de septiembre de 2024 solicitando la conversión del caso a trámite ordinario mediante Orden del 4 de octubre de 2024 después de evaluar y rechazar los argumentos de la Apelante en apoyo de su solicitud. Puntualiza en su escrito en oposición a la apelación que, aparte de repetir la alegación falsa mencionada, la Apelante no alega ningún otro fundamento válido para apoyar su señalamiento de que procedía un trámite ordinario para la atención debida de sus alegadas defensas.

## II

Primeramente, enfatizamos que las disposiciones del Código Civil de 2020, código vigente, no son aplicables al contrato objeto de este litigio, pues, las disposiciones de este Código no son aplicables a los contratos en curso de ejecución vigentes al momento de su vigencia. 31 LPRA sec. 11718. El contrato entre las partes fue otorgado el 12 de julio de 2012, renovándose tácitamente mes a mes, hasta el 30 de septiembre de 2021 fecha en que el apelado lo dio por terminado. Concluimos así, que la normativa legal aplicable es aquella dispuesta en el Código Civil de 1930.

El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. 31 LPRA sec. 3371. Con ese objetivo las partes

contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. 31 LPRA sec. 3372. Ahora bien, la validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes. 31 LPRA sec. 3373.

En cuanto al primer error señalado, advertimos que no fue cometido. La cláusula Catorce del Contrato establecía lo siguiente:

> El Incumplimiento de cualquiera de las cláusulas de este contrato dará derecho a LA ARRENDADORA a dar por terminado este contrato y a exigir el inmediato desalojo del local, siendo responsable LA ARRENDATARIA en este caso por cualesquiera de las costas, gastos u honorarios legales en que la ARRENDADORA se vea obligada a incurrir para hacerla desalojar el local y sujeto a lo pactado en párrafo DIECIOCHO. Para el caso de una acción judicial de desahucio y para el caso de una acción de cobro de cualquier suma adeudada bajo este contrato, las partes acuerdan desde ahora el pago de la suma de DOS MIL DOLARES ($2,000), por los conceptos antes mencionados, suma esta que se considerara liquida y exigible en cada caso por la sola radicación de la demanda por LA ARRENDADORA.

La autonomía de la voluntad de las partes representada en las cláusulas contractuales pactadas nos obliga a acatar lo pactado siempre que no sea contrario a la moral, la ley ni el orden público. Elementos estos que viciarían la contratación y que en esta situación no están presentes. Ante la claridad de la cláusula catorce nos toca hacer valer el sentido literal de la misma.  Las partes acordaron, libre y voluntariamente que, con la mera presentación de la Demanda, entre otras, exigiendo el desalojo de la propiedad, la parte Arrendataria pagaría DOS MIL DOLARES ($2,000), por concepto de costas, gastos u honorarios legales. Independientemente la parte apelada haya pagado cantidad alguna a su representante legal, lo cierto es que la parte apelante se obligó a pagar la cantidad antes mencionada con la mera presentación de la Demanda.  No existe otro requisito adicional, que la mera presentación, para que proceda el pago.

Puntualizamos que cuando los términos del contrato son claros, se hará valer el sentido literal de lo que disponen. *Aponte Valentín v. Pfizer Pharmaceuticalls, LLC.*, 208 DPR 263, 286 (2021): *Savary et al. v. Mun. Fajardo et al.*, 198 DPR 1014, 1030 (2017). Los tribunales no deben recurrir a las reglas de interpretación ni a la hermenéutica cuando la intención de los contratantes y los términos pactados son claros. Véase Art. 1233 del Código Civil, 31 LPRA sec. 3471; Aponte *Valentín v. Pfizer Pharmaceuticalls, LLC., supra.*

En cuanto al segundo error señalado, nuevamente se equivoca la parte apelante, los términos del contrato son claros y hacen innecesaria la interpretación de los actos. Mas bien la controversia precisa de la interpretación literal del acuerdo entre las partes. La cláusula Uno del Contrato dispone:

Término del Contrato

El termino de vigencia de este contrato será de UN AÑO (1), el cual comenzará el 1 de agosto de 2012 y expirará el 31 de julio de 2013.
Prorroga; Obligación de notificar

LA ARRENDATARIA podrá prorrogar el contrato al finalizar el termino original por dos (2) años adicionales bajo los mismos términos y condiciones aquí convenidos, siempre y cuando LA ARRENDATARIA este al día en el pago de la renta y otros pagos bajo el contrato y haya cumplido con todas sus demás obligaciones bajo este contrato.

Si LA ARRENDATARIA no interesa prorrogar el contrato al vencimiento del término original, estará obligada así informárselo por escrito a LA ARRENDADORA por lo menos sesenta (60) días antes del vencimiento del término original. De no efectuar LA ARRENDATARIA esta notificación, con el termino de anticipación aquí señalado, se entenderá que LA ARRENDATARIA ejerció su derecho a prorrogar el contrato y el mismo quedara automáticamente renovado por un término adicional de dos (2) años.

El contrato expirara al vencimiento del término original de un (1) año si LA ARRENDATARIA comunica su intención de no renovar el contrato. En ese caso LA ARRENDATARIA estará obligada a entregar la posesión del local en o antes de la fecha de vencimiento del contrato.

Si el contrato es prorrogado por dos (2) años adicionales, entonces expirara al vencimiento del término de

prorrogar a menos que las partes, antes del vencimiento de la prórroga, lleguen a un nuevo acuerdo.

Los términos son claros, la doctrina no requiere interpretación sino aplicación de la clara norma a los efectos de respetar la voluntad de los acuerdos entre las partes, no siendo estos contrarios a la ley, la moral y el orden público. Además, y según señala el apelado cuando se presentó la demanda ya habían transcurrido 52 días desde la entrega de la carta del 18 de julio de 2024 al apelante requiriéndole que desalojara el local. Incluso desde el 21 de octubre de 2024, fecha de la Sentencia que nos ocupa, han transcurrido en exceso los 12 días concedidos por el desalojo haciendo el señalamiento uno inconsecuente para la solución en los méritos de la controversia entre las partes.

Finalmente, destacamos que el desahucio constituye un procedimiento sumario para reivindicar la posesión y el disfrute de un inmueble. *Turabo Ltd. Partnership v. Velardo Ortiz,* 130 DPR 226, 241 (1992). Su única función es recuperar la posesión de hecho de un inmueble mediante el lanzamiento o expulsión del arrendatario o precarista que la ostenta sin pagar canon alguno. *C.R.U.V. v. Román,* 100 DPR 318, 321 (1971)*; Martínez Santiago v. Dalmau Andrades,* 93 DPR 191, 193 (1966)*. Se recomienda que se ma*ntenga como un proceso sumario, por lo que, su conversión a un procedimiento ordinario descansa en la sana discreción del tribunal de instancia. *Turabo Ltd. Partnership v. Velardo Ortiz, supra.*

De ordinario, este Tribunal no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

Ninguno de los criterios antes mencionados están presentes en la determinación del foro recurrido de rechazar la conversión del proceso sumario, por lo que el tercer error no fue cometido.

III

Por todo lo antes expuesto, se confirma la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones